## In re GOGAL.

### No. 148874.

District Court, W. D. Pennsylvania.

Dec. 31, 1947.

Gregory Zatkovich, of Pittsburgh, Pa., for petitioner.

Hyman Scher, of Pittsburgh, Pa., for Immigration and Naturalization Service.

GOURLEY, District Judge.

Andrew Gogal, known as Andrew Gogaly and Andrew Gogil, filed Petition for Naturalization No. 148874 in the United States District Court for the Western District of Pennsylvania on August 14, 1946, under the provisions of Section 701 of the Nationality Act of October 14, 1940, its supplements and amendments, 8 U.S.C.A. § 1001.

The Immigration and Naturalization Service admits that the petitioner has complied with all the requirements of Section

701 of the Nationality Act with the exception that the petitioner has failed to establish that he was lawfully admitted to the United States on August 12, 1928, as a United States citizen.

The petitioner was born in Walston, Jefferson County, Pennsylvania, in the year 1901. Although the exact date of birth is in dispute, the records in the office of the Register of Wills of Jefferson County, Pennsylvania, indicate the petitioner was born on September 22, 1901.[1]

It further appears from the records of St. Peter and Paul Greek Catholic Church at Punxsutawney, Pennsylvania, that the petitioner was born on the 22nd day of October, 1901.[2]

In 1904 the petitioner was taken by his mother to Czechoslovakia and in either the year 1911 or 1912 his father went to Czechoslovakia with the intention to return with the petitioner and his mother to the United States, but his father died a short time after his arrival in Czechoslovakia. During the month of April or May, 1922, the petitioner received a notice that he was to be inducted into the Army of Czechoslovakia. No attempt was made to communicate with the American authorities for the purpose of preventing his entry into the Army. The petitioner explains that he was unable to speak English; that he resided some distance from the American Consul, and believed that since he was born in the United States, it was not necessary for him to give any concern or attention to his notice of induction. On October 1, 1922, he received his formal call to enter the armed forces of Czechoslovakia, and no attention was given this notice. That on or about the 28th day of October, 1922, the gendarmes or police came to his home in Czechoslovakia and forceably delivered him to the military authorities of that country. That he had no choice or selection in the matter under the circumstances; a uniform was given to him; he was taken into a field with a large number of men who, he explained, comprised a batallion; that some distance away an officer was reading although he was not able to hear or understand; he was not required to raise his hand to God or was any oath administered to him, and that an oath of allegiance to the Republic of Czechoslovakia was not taken by the petitioner previous or subsequent thereto. After he was taken into custody and compelled to enter the armed forces of Czechoslovakia, he served for a period of two years or until September 29, 1924. He married in 1925 and to the marriage union were born two children; Andrew in the year 1926 and Maria in the year 1928. On December 15, 1927, the petitioner decided to return to the United States and requested a United States Passport from the American Consulate at Prague, Czechoslovakia, which was refused in February of 1928. The petitioner was unable to speak English at that time and talked to the American Consulate

---

[1] "Birth Certificate

"From the Records of Births of Jefferson County, Pennsylvania

"No. 25 Name of Child *Andy Gogil*

"Sex, Male *x* Female — Color, White *x* Colored —

"Full name of Father *John Gogil*

"Full name of Mother *Annie Gogil*

"Residence of Parents *Walston*

"Occupation of Father *Laborer*

"Date of Birth *Sept. 22, 1901*

"Place of Birth *Walston No. 27*

"Recorded *Dec. 18, 1901*

"Commonwealth of Pennsylvania ⎱ ss
"County of Jefferson ⎰

"I, *Walter Evans*, Recorder of Deeds, Register of Wills and Ex-Officio Clerk of Orphans' Court, in and for said County, do hereby certify that the foregoing is a full, true and correct copy of the whole record of the Birth of *Andy Gogil*, the same as it appears at Docket No. 2 Page 84 Line No. 25 of the Records of Birth of Jefferson County.

"In testimony whereof, I have hereunto set my hand and affixed my official seal at Brookville, Pa., this *23rd* day of *January*, A.D. *1941*.

"/s/ *Walter Evans*
"Recorder of Deeds, Register of Wills and Ex-Officio Clerk of Orphans' Court."

[2] "I, the undersigned pastor of St. Peter and Paul's Greek Catholic Church at Punxsutawney, Pa., do hereby certify that the records of this church show that Andrej Gogaly, son of John Gogaly and Anna Lipsa was born the 22nd day of October, 1901, and was baptized by Rev. Anthony Mihaly the 26th day of October, 1901. Issued this 7th day of August, 1928.

Rev. P. Morany, Pastor."

Bears seal of above named church.

through an interpreter. On or about April 10, 1928, he left Czechoslovakia and arrived in Canada on April 29, 1928. On August 11, 1928, he asked permission to return to the United States. He was examined by a Board of Public Inquiry of the United States Immigration Station, Montreal, Canada, who, after hearing the testimony, admitted him to the United States as a citizen. He thus entered the United States on August 12, 1928, at Buffalo, New York.

·Petitioner has resided continuously in the United States since August 12, 1928. He was inducted into the armed forces of this country on August 20, 1942, and received an honorable discharge on May 22, 1943. His discharge was based on the fact that he was over thirty-eight years of age, and was agreeable to accept employment in essential industry.

No question was raised as to the citizenship of the petitioner until the year 1937 when efforts were extended by the petitioner to secure a passport for his wife and children to come to this country from Czechoslovakia, since which time the status of his citizenship has been in dispute.

The Government states that the passport which was issued to him on August 12, 1928, would not have been granted if it had been known that he had been denied a passport by the American Consulate at Prague, Czechoslovakia, and if he had correctly stated the date of his birth to be September 22, 1901, rather than October 22, 1901.

There appear to be several questions of fact that are in dispute—

1. What is the exact date of birth of the petitioner?

In respect to this question the birth records of Jefferson County, Pennsylvania, indicate the date of birth to be September 22, 1901, at Walston, Pennsylvania. The baptismal record of St. Peter and Paul Greek Catholic Church at Punxsutawney, Pennsylvania, indicates the date of birth to be October 22, 1901. Although this inconsistency appears, the date of birth as it appears in the official records of Jefferson County, Pennsylvania, would prevail. In this connection it would be possible under the law of the Commonwealth of Pennsylvania for the petitioner to have the birth records corrected, more particularly with the Bureau of Vital Statistics of the Commonwealth of Pennsylvania. Since this has not been done, the Court is compelled to accept the date of the petitioner's birth to be September 22, 1901. However, I do not believe it makes any material difference, under the facts in this case, as to whether the true date of birth is September 22, 1901, or October 22, 1901, for the reason that the petitioner was inducted into the Army of Czechoslovakia on October 28, 1922.

2. Did the petitioner take an Oath of Allegiance to the Czechoslovakian Government and, if so, what was the date when the oath was taken?

The petitioner was inducted into the armed forces of Czechoslovakia on October 28, 1922. The oath which a person was required to take, who was inducted into the military forces of Czechoslovakia on October 28, 1922, was as set forth in Footnote 3.[3] At the time of his induction petitioner was taken to a field, as he explains it, together with a large group of men; he was not required to raise his arm to Almighty God; he did not hear what was being stated, and was not informed that an oath was being administered. It is impossible for any person to swear before their God, or affirm, that certain things will be done or not done without knowing or hearing that to which the oath is being taken. In

---

[3] "We swear, by everything which we hold sacred, and in full accord with our conscience and conviction, that we shall obey the President and the Government of the Czechoslovak Republic, that we shall obey our commanders appointed by the President and by the Government; we swear that we shall obey their orders without opposition at all times and in all places, in time of danger, without hesitation or opposition, that we shall not abandon our units, but that we shall be prepared to give our lives for the defense of our country and for its freedom; we swear, that we shall love our comrades, that we shall be loyal to one another, that we shall not desert one another in time of danger, but that we shall defend ourselves to the end bound by our manly honor and consciousness of our civic duties. This we swear."

view of all the circumstances, I believe that the petitioner did not take the Oath of Allegiance to the Czechoslovakian Government.

3. Was petitioner inducted into the Czechoslovakian Army under duress?

In this connection it appears that he received a notice in April or May of 1922 that he was going to be inducted into the Czechoslovakian Army. He states that no attention was given to this notice for the reason that he was born in the United States; that he was unable to speak English, and that he lived some distance from the location of the American Consulate. During the first part of October, 1922, he received an additional notice that he was to be formally inducted into the armed forces of Czechoslovakia, and again no attention was given to said notice; that a short time thereafter he was forceably taken from his home by the police authorities in the country of Czechoslovakia, given a uniform, and compelled to enter military service. I, therefore, believe that the petitioner was inducted into the Czechoslovakian Army under duress, force, fear and intimidation.

4. Was the Oath of Allegiance administered to petitioner an unqualified Oath of Allegiance to Czechoslovakia?

It appears from the oath which has been forwarded by the Department of State in the Country of Czechoslovakia to the Secretary of State of this country that it does require unqualified allegiance to Czechoslovakia. However, for reasons heretofore given, I do not believe that the petitioner accepted or swore to said Oath of Allegiance.

5. Was he lawfully admitted to the United States when he entered the United States at Buffalo, New York, on August 12, 1928?

I believe this question should be answered in the affirmative for the reason that the petitioner was a citizen of the United States at the time of his admission, as a result of his birth in this country at Walston, Jefferson County, Pennsylvania, on September 22, 1901.

A person who is born in the United States, regardless of the citizenship of his parents, becomes an American citizen not by gift of Congress but by force of the Constitution. U.S.C.A., Constitutional Amendment 14, Section 1.

The power of naturalization vested in Congress by the Constitution is the power to confer citizenship, not a power to take it away. The statute providing that a national of the United States by birth or naturalization shall lose his nationality by entering, or serving in, the armed forces of a foreign state, unless expressly authorized by laws of the United States, does not cause loss of nationality where such a person is drafted over his protest into foreign military service, and the statute is limited to cases where induction into foreign military service is voluntary. Nationality Act of 1940, § 401, 8 U.S.C.A. § 801; Executive Order April 25, 1933, No. 6115; In re Dos Reis ex rel. Camara v. Nicolls, District Director of Immigration and Naturalization, 1 Cir., 161 F.2d 860.

Although the Oath of Allegiance, which was required by all persons who entered the armed forces of Czechoslovakia, contains phraseology which indicate that an unqualified Oath of Allegiance to Czechoslovakia becomes mandatory, this oath at the most creates a presumption of expatriation on the part of the petitioner created by service in the armed forces of Czechoslovakia. However, this presumption may be rebutted and under the facts in the instant case I believe the petitioner has met that burden of proof. As a result thereof the only conclusion which can be reached is that the petitioner was inducted into the Czechoslovakian Army against his will, under fear, duress and compulsion and, as a result thereof, did not lose his United States citizenship. It is clear to me that Congress intended that in no event should a person entering or serving in the armed forces of a foreign state, where the service is involuntary and where the avoidance thereof is not within the power of the individual, lose his citizenship as a result thereby. See Ruling of Attorney General, Opinion No. 130 (Vol. 40) October 16, 1947 (made public November 5, 1947), 16 L.W. 2249; Dos Reis ex rel. Camara v. Nicolls, supra.

272

It is a matter of historic record that the government of the United States, as an encouragement to loyal aliens who engaged in the defense of this country by service in the armed forces, has in past years relieved them from some of the burdensome requirements of the general naturalization laws. This attitude proceeds upon the principle that even non-citizens who are ready and willing to sacrifice their lives in the maintenance of this democratic government are deserving of the high gift of citizenship when vouched for by responsible citizens as loyal and of good character, and shown by government records that they served honorably.

I make the comment just expressed, although it does not have application to the facts in this case for the reason that I feel the petitioner to be a citizen of the United States, and he has carried an excellent reputation and standing in every respect since he came to this country on August 12, 1928. He was a blood donor to the Red Cross during World War II, he purchased Government Bonds, he became a member of the armed forces of this country, and later was engaged in the pursuit of employment in essential war industry. It would appear harsh to me and very unfair to require this individual to become a subject of deportation to the Country of Czechoslovakia, and it is extremely unfortunate that he has been denied the right to have his wife and two children with him since he was at first able to financially request the right to bring them to this country in the year 1937.

■ The Petition for Naturalization is refused for the reason that the petitioner is already a citizen of the United States by virtue of his birth on September 22, 1901, at Walston, Jefferson County, Pennsylvania.

I would suggest and recommend that the proper governmental authorities extend a helping hand to this petitioner to make possible the bringing of his wife and children to this country at the earliest possible date. I make this comment for the reason that I believe petitioner has been unjustly denied the companionship and comfort of his family for over ten years.