**Petition of DI IORIO.**

**No. 30 I594.**

United States District Court
D. Massachusetts.

Sept. 26, 1949.

Maxwell Lambe, U. S. Naturalization Examiner, Boston, Mass., for government.

2. Hoiness v. United States, 335 U.S. 297, 69 S.Ct. 70, 93 L.Ed. ——, at page ——.

Ralph F. Martino, Boston, Mass., for DiIorio.

## McCARTHY, District Judge.

This memorandum is predicated on a petition for naturalization filed by one DiIorio under the Nationality Act of 1940, Section 317(c), 8 U.S.C.A. § 717(c). The section reads as follows: "Section 317(c). A person who shall have been a citizen of the United States and also a national of a foreign state, and who shall have lost his citizenship of the United States under the provisions of section 401(c) of this Act, shall be entitled to the benefits of the provisions of subsection (a) of this section, except that contained in subdivision (2) thereof. Such person, if abroad, may enter the United States as a nonquota immigrant, for the purpose of recovering his citizenship, upon compliance with the provisions of the Immigration Acts of 1917 and 1924."

Subsection (a) of Section 317, 8 U.S.C.A. § 717(a), referred to in the foregoing quotation, stipulates that certain American women who lose United States citizenship as the result of marriage may be naturalized:

"Upon compliance with all requirements of the naturalization laws with the following exceptions:

"(1) No declaration of intention and no certificate of arrival shall be required, and no period of residence within the United States or within the State where the petition is filed shall be required.

"(2) The petition need not set forth that it is the intention of the petitioner to reside permanently within the United States.

"(3) The petition may be filed in any court having naturalization jurisdiction, regardless of the residence of the petitioner.

"(4) The petition may be heard at any time after filing if there is attached to the petition at the time of filing a certificate from a naturalization examiner stating that the petitioner has appeared before such examiner for examination."

■ This matter has come before the Court upon an agreed statement of facts which discloses that the petitioner's father was naturalized as a United States citizen on November 10, 1919. Petitioner was born in Italy on January 2, 1922, at which time the father had not as yet resided in Italy for a period of two years. Thus at the time of petitioner's birth, his father was not a national of Italy. Petitioner acquired United States nationality by virtue of his birth abroad of a United States citizen father, pursuant to the provisions of Section 1993 of the Revised Statutes. After two years residence in Italy, the father re-acquired Italian nationality by virtue of the provisions of Article IX(3) of the Italian Law. Under Article XII of the same law the petitioner also acquired Italian nationality. He, therefore, had both United States citizenship and Italian nationality.

■ In February, 1943, the petitioner entered the Italian Army and served therein until May, 1943. By this action he lost his United States nationality pursuant to the provisions of Section 401(c) of the Nationality Act of 1940, 8 U.S.C.A. § 801 (c), which states that a person who is a national of the United States, whether by birth or naturalization, shall lose his nationality by "entering, or serving in, the armed forces of a foreign state unless expressly authorized by the laws of the United States, if he has or acquires the nationality of such foreign state." Counsel for petitioner and for the Government have stipulated that the induction into and service in the Italian Army was voluntary. See Dos Reis ex rel. Camara v. Nicolls, 1 Cir., 161 F.2d 860; In re Gogal, D.C., 75 F.Supp. 268.

After his release from the Italian Army the petitioner continued his studies at an Italian medical school. In 1946 he went to the American Consul at Naples, Italy, for the purpose of obtaining an American passport and was told he would have to wait as his case had to be sent to Washington. He never heard from the consul regarding his case and he, therefore, again went to the Consul in 1947 in order to obtain a visa to come to the United States. He did not receive one at that time but in April, 1948, he obtained a visa. The records show that on

April 28, 1948, petitioner was issued non-immigrant visa No. 396, which visa was issued under Section 3(2) of the Immigration Act of 1924, 8 U.S.C.A. § 203(2), and that he entered the United States at Boston, Massachusetts, as a visitor for six months in order to visit his uncle in the United States. The petitioner was asked the reason for obtaining a visitor's visa instead of an immigration visa and he answered that he obtained a visitor's visa because he was afraid that the Communists might win the election in Italy and that he would not have received permission to leave Italy. He was also afraid he would be drafted into the Italian Army as he had received notification to report on two occasions.

The parties submit that the question to be determined by this Court is whether a legal entry for permanent residence in the United States is necessary under Section 317(c), in th light of the express waiver of declaration of intention, certificate of arrival, and residence requirements in Section 317(a).

Petitioner contends that the waiver of these requirements shows a Congressional intent to exempt the petitioner from securing a legal entry for permanent residence. The Government, on the other hand, urges that the last sentence of Section 317(c)—"Such person, if abroad, may enter the United States as a nonquota immigrant, for the purpose of recovering his citizenship, upon compliance with the provisions of the Immigration Laws of 1917 and 1924"—makes it mandatory that the petitioner establish lawful admission before he can be naturalized.

The question is certainly not free from difficulty. I have been referred to no case which construes the pertinent section as to the particular problem involved. The legislative history cannot be deemed highly illuminative. I find myself in somewhat the same position as Mr. Jenkins of Ohio who, during the discussion on the House floor of H. R. 9980 (The Nationality Act of 1940), stated: "I have before me Senate Amendment No. 4 (Section 317(c)) and it would be of no use for me to read it to the House because it is so complicated that no one could understand it by reading it once or even reading it ten times, and to give you a sample I will read a part of it: (reads Section 317(c)). Of course, the language of the proposed amendment, no doubt, has been well prepared, but it is meaningless in itself and I would like someone to explain to me just what the amendment does." 86 Cong.Rec. 13246.

What did Congress intend when it provided in Section 317(c) that "such person, if abroad, may enter the United States as a nonquota immigrant * * *"? Did it contemplate a legal entry for permanent residence even though declaration of intention, certificate of arrival, and residence requirements were waived? After much deliberation it is my considered judgment that it did intend such a legal entry. The last sentence of Section 317(c) must have been included for some definite purpose; I canno⁺ readily ascribe to Congress the authorship of a meaningless provision. I do not feel that the privilege of entering as a non-quota immigrant to recover citizenship is merely permissive. It would be indeed idle to demonstrate such a course if any person abroad who is entitled to the benefits of Section 317(a) could escape the comparative rigors of legal entry for permanent residence by merely entering as the petitioner has done or by more secretive means. For if a legal entry is not a prerequisite to naturalization under this statute, then it is impossible, as I see it, to put any limitation upon the type of entry which will entitle applicants to the privilege conferred by the statute. The Congress has afforded a boon to a person who did a voluntary act of expatriation under Section 401(c) and not to a person who did a voluntary act of expatriation under Section 401(b) or Section 401(d), 8 U.S.C.A. § 801 (b–d). Why it did this is nowhere explained in the legislative history. Dos Reis ex rel. Camara v. Nichols, 1 Cir., 161 F.2d 860, 868. Is it then unreasonable to conclude that the Congress desired to limit its beneficence by requiring a person eligible under Section 317(c) to enter as a non-quota immigrant before naturalization, to "work his way back to citizenship according to law"? 86 Cong.Rec. 13246.

The Congressional intent is reflected to some extent in the House discussion of H.R. 9980 (86 Cong.Rec. 11964, 11965):

"Mr. Jenkins: As I see it, then, if you have prepared this bill with all due care, and I know you have, you can take the position that if you have omitted anything those omissions can be cured in the Senate.

"Mr. Rees: That is correct.

"Mr. Jenkins: You have not invaded the rights of those who control the matter of legal entry into this country.

"Mr. Rees: No.

"Mr. Jenkins: That is a province of another department, and in order to have the right to be naturalized at all, a man must always be able to prove lawful entry.

"Mr. Rees: That is correct.

"Mr. Jenkins: That is one objection many people may have to some features of this bill. If they thought it would permit a man to come in unlawfully, and in spite of his unlawful entry to hide behind this new provision of the law, it would be an unfortunate situation.

"Mr. Rees: Yes, that is right, but this measure does not have anything to do with the question of immigration at all."

██ If, then, the Congress in passing the Nationality Act of 1940 was disposed not to interfere with the normal course of immigration and, *in addition*, has provided that entry to the United States under Section 317(c) should be as a non-quota immigrant, I cannot but conclude that a legal entry is a prerequisite to naturalization under the statute.

It also appears significant that Section 318, 8 U.S.C.A. § 718, specifies that petitioner under that section shall not "be obliged to comply with the requirements of the immigration laws".

The petitioner contends that under other sections of the Nationality Act of 1940 the waiver of declaration of intention, certificate of arrival, and residence requirements have been construed as a waiver of legal entry for permanent residence, citing Petition of Gislason, D.C.Mass., 47 F.Supp. 46 and In re Fleischmann, D.C. 49 F.Supp. 223, arising under Sections 324 and 325 of the Nationality Act of 1940, 8 U.S.C.A. §§ 724 and 725. But in these sections there is no mention of legal or illegal entry and no provision as to entry under any immigration laws. Here the Congress has clearly defined proper manner of entry. Such being the case, the waiver of certificate of arrival and residence requirements, which are requirements for naturalization, should not affect the explicit requirement of legal entry for permanent residence. Perhaps the elimination of the necessity for an arrival certificate manifests Congressional intent that petitioners in these cases may prove legal entry by other means than this specific document from the Immigration Authorities. The argument that the elimination of the necessity of a declaration of intention by implication eliminates the requirements of lawful entry for permanent residence was rejected in Petition of Weber, D.C., 61 F.Supp. 683.

Granting that the language of Section 317(c) when taken in conjunction with the provisions of Section 317(a) is somewhat inconsistent and therefore of dubious interpretation, I have arrived at the decision that the statute should be construed strictly against the petitioner. See Maney v. United States, 278 U.S. 17, 49 S.Ct. 15, 73 L.Ed. 156; United States v. MacIntosh, 283 U.S. 605, 51 S.Ct. 570, 75 L.Ed. 1302.

██ Since it is conceded in the agreed statement of facts that petitioner, who was abroad, did not enter the United States as a non-quota immigrant for the purpose of recovering his citizenship upon compliance with the provisions of the Immigration Acts of 1917 and 1924, his petition is hereby denied.