**SCARDINO v. ACHESON, Secretary of State.**

**Civ. No. 700.**

United States District Court
D. New Jersey.

July 20, 1953.

Amerigo D'Agostino, Newark, N. J., for plaintiff.

William F. Tompkins, U. S. Atty., Newark, N. J., Edward V. Ryan, Jersey City, N. J., for defendant.

MODARELLI, District Judge.

Plaintiff seeks a declaratory judgment under the Nationality Act of 1940, § 503, 8 U.S.C.A. § 903, now covered by the Nationality Act of 1952, 8 U.S.C.A. § 1503, that he is a citizen of the United States.

The American Consul at Palermo denied plaintiff's application for registration as a United States citizen, and issued to him a Certificate of Loss of Nationality of American citizenship on April 19, 1948.

Plaintiff is a native-born citizen. He was born in Jersey City, New Jersey, on May 10, 1916. His parents took him to Patti, Italy, on October 27, 1922. He lived there continuously until his return to this country on a Certificate of Identity issued under Section 503 of the Nationality Act of 1940. He was inducted into the Italian Army on May 13, 1937, and during the next month, he was compelled to take an oath of allegiance to Italy. He served until August 20, 1938, and was recalled to duty from May 4, 1940 to October 15, 1945. He voted in the Italian Election on June 2, 1946.

Defendant contends that the plaintiff elected Italian citizenship and was expatriated under the Nationality Act of 1940, § 401(b), (c), and (e), 8 U.S.C.A. § 801(b, c, e), by taking an oath of allegiance to the Italian Crown, by service in the Italian Army, and by voting in the Italian Election.

It was properly established by Perkins v. Elg, 1939, 307 U.S. 325, 334, 59 S.Ct. 884, 83 L.Ed. 1320 that expatriation must be voluntary, unconstrained, and deliberate. If the plaintiff felt compelled to submit to induction in the army, take the oath, and to vote in fear of reprisals or physical injury; if the plaintiff acted under duress, the acts of expatriation cannot be considered conclusive. Yuichi Inouye v. Clark, D.C.S.D.Cal.1947, 73 F.Supp. 1000; Dos Reis ex rel. Camara v. Nicolls, 1 Cir., 1947, 161 F.2d 860. This court agrees with Tomasicchio v. Acheson, D.C.D.C.1951, 98 F.Supp. 166, 174:

"The Government argues that the plaintiff was under a duty to protest against being drafted into the Italian army and not to submit without a contest. No doubt, however, a protest would have been futile and a refusal to take the oath would have been equally ineffective. The plaintiff might well have feared severe reprisals if he either protested or contested the order to respond to the draft. During the Fascist regime in Italy it would have been realistic to fear such an eventuality. The Government does not restrict its solicitude to stout-hearted men. The timid, the weak, and the ignorant are equally entitled to its protection. The law does not exact a crown of martyrdom as a condition of retaining citizenship." 98 F.Supp. at page 174.

Plaintiff testified that on receipt of notice to report for military duty, he protested to the officer in charge of induction that he was an American citizen. Despite that he was told to report under threat of imprisonment. He further testified that he protested to the American Consulate at Palermo and that the secretary at the information desk informed him to proceed with the military service because that would not deprive him of his American citizenship. He further

testified that he was unable to speak to the American Consul. He also testified that he was never asked to sign the "protest book."

I find the plaintiff was not expatriated by taking an oath of allegiance in 1937 under legal compulsion, if expatriation is to be considered as an expression of free choice. In 41 Op.Attys.Gen. 16 (May 8, 1951), the Attorney General ruled as follows: "In my opinion, the choice of taking the oath or violating the law was, for a soldier in the army of Fascist Italy, no choice at all."

Section 401(c) of the Nationality Act of 1940 declares that United States citizenship would be lost by: "Entering, or serving in the armed forces of a foreign state unless expressly authorized by the laws of the United States, if he has or acquires the nationality of such foreign state". This section did not go into effect until January 13, 1941, and is not retroactive. Plaintiff was recalled to duty on May 4, 1940, and was required to take an oath of allegiance involuntarily and under duress when he still was a citizen of the United States.

We find In re Gogal, D.C.W.D.Pa.1947, 75 F.Supp. 268:

> "* * * The statute providing that a national of the United States by birth or naturalization shall lose his nationality by entering, or serving in, the armed forces of a foreign state, unless expressly authorized by laws of the United States, does not cause loss of nationality where such a person is drafted over his protest into foreign military service, and the statute is limited to cases where induction into foreign military service is voluntary. * * *" 75 F.Supp. at page 271.

See also Ishikawa v. Acheson, D.C.D. Hawaii 1949, 85 F.Supp. 1, and Shiegenori Morizumi v. Acheson, D.C.N.D.Cal.1951, 101 F.Supp. 976.

As evidence of plaintiff's devotion to the country of his birth, plaintiff testified that when pressed by the Germans to fight against American troops he refused to do so and his refusal led to two years of imprisonment in Germany. In support of this testimony, plaintiff submits two affidavits.

The first is by citizens of Milazzo, Italy, one of whom was a comrade-in-arms of the plaintiff. The affiants state that Scardino did not fight against American troops, preferring capture and deportation to Germany. The second affidavit is made out by four affiants, one of whom was in the same army unit with Scardino. This second affidavit likewise attests that Scardino refused to fight against American troops, and, consequently suffered deportation to Germany.

If the above facts are true, and there was no contradiction of the same, the plaintiff's course of conduct while in the Italian Army indicates clearly that he considered himself an American citizen and would negative any inference that he intended to abandon or give up his American citizenship voluntarily.

To be a citizen of the United States is truly a most precious possession, whether acquired by birth or naturalization. The Apostle Paul arrested in connection with a riot in Jerusalem was able proudly to tell the centurion: "I am a man of Tarsus * * * a citizen of no mean city." and demanded to be heard. Citizens of the United States are citizens of no mean country and have a right to be heard—in all that word connotes legally—before expatriation. Citizenship is not easily granted nor should it be taken away arbitrarily. There are some among us who think that the United States has more grounds of expatriation than any other country in the world. Whether or not that is so, I knoweth not, but it may be. And so what degree of proof should be required in cases of this character?

In denaturalization cases, the government is usually required to prove its case by clear, unequivocal, and convincing evidence. Knauer v. United States, 1946, 328 U.S. 654, 66 S.Ct. 1304, 90 L.Ed. 1500; Baumgartner v. United States, 1944, 322 U.S. 665, 64 S. Ct. 1240, 88 L.Ed. 1525; Schneiderman v. United States, 1943, 320 U.S. 118, 125, 63 S.Ct. 1333, 87 L.Ed. 1796.

The court concurs with Circuit Court Judge Clark when he states: "We can see no reason for imposing a lighter

burden on the Government if it seeks to show the expatriation of a native-born citizen." Acheson v. Maenza, D.C.Cir.1953, 202 F.2d 453, 456.

I am satisfied that the plaintiff was compelled to take an oath of allegiance and later re-inducted involuntarily and under duress. There is no proof that the plaintiff acted voluntarily. Under the cases cited, I am convinced plaintiff's acts do not disqualify him from citizenship because of his service in the Italian Army.

There remains the question of plaintiff's vote in Italian Election of June 2, 1946. Chapter 321, P.L. 114, approved August 16, 1951, 65 Stat. 191, permits naturalization of those who lost citizenship by voting in the Italian Elections of June 2, 1946 and April 18, 1948. The court holds that plaintiff being a citizen of the United States of America at the time of the Italian Election of 1946 may take the appropriate oath of allegiance as provided for under aforesaid law.

The foregoing opinion shall constitute findings of fact and conclusions of law, as required by Fed.Rules Civ.Proc. rule 52, 28 U.S.C.

An appropriate order will be entered.