**MINORU HAMAMOTO v. ACHESON, Secretary of State.**

**Civ. No. 10683.**

United States District Court
S. D. California, Central Division.
May 10, 1951.

A. L. Wirin and Fred Okrand, Los Angeles, Cal., for plaintiff.

Ernest A. Tolin, U. S. Atty., Clyde C. Downing, Asst. U. S. Atty., Arline Martin and Robert K. Grean, Assts. U. S. Atty., all of Los Angeles, Cal., for defendant.

BYRNE, District Judge.

The plaintiff seeks a decree pursuant to section 903, Title 8 U.S.C., 8 U.S.C.A. §

903, adjudging him to be a citizen of the United States following the refusal of the United States Consul to register him as a citizen on the ground that he had lost his citizenship because of his service in the Japanese army in contravention of section 801(c), Title 8 U.S.C., 8 U.S.C.A. § 801(c).[1]

Plaintiff Hamamoto was born in the United States in Gardena, California, on December 21, 1917. He journeyed to Japan with his family in 1924 and returned to the United States in July 1935 after a stay of eleven years. He again went to Japan in 1938 and remained there four months before returning. He left the United States on his final trip to Japan in January 1940. In March or April 1940 he received his notice to report for the Japanese army physical examination, to which he responded. About sixteen months later, on July 5, 1941 he was inducted into the Japanese army and served until September 28, 1941 at which time he was released because of physical incapacity. He remained in Japan and followed the vocation of farming prior to and during the period of the war.

The plaintiff had dual citizenship. He was a national of this country by reason of his birth here, and acquired Japanese nationality under Article 1 of the Nationality Act of Japan in effect at the time of his birth: "A child is regarded as Japanese if its father is at the time of its birth a Japanese * * *."

■■ The acts upon which section 801 expressly condition the consent of our government to the expatriation of its citizens are stated objectively. When an American citizen has performed one of the enumerated overt acts, he has expatriated himself. Savorgnan v. United States, 338 U.S. 491, 70 S.Ct. 292, 94 L.Ed. 287. However, the overt act must be voluntarily done. Dos Reis ex rel. Camara v. Nicolls, 5 Cir., 161 F.2d 860.

■ The critical question here is whether the plaintiff's action in entering the Japanese army was voluntary.

The plaintiff in his brief says: "Simply stated, the sole issue is one of duress. If one were to be cavalier about it, one could with ample justification say that there is no issue of duress either, for when one is drafted into the army in any country, his response to that call in the nature of things cannot be a voluntary act."

To accept that reasoning is to defeat the Congressional design to discourage dual nationality which is implicit in the statute. Can we believe that Congress intended the Act to be ineffective with relation to foreign states that followed a policy of conscription in the recruitment of their armies? Can we say that the hundreds of thousands of United States servicemen who were conscripted and served during the last war were involuntarily forced into the service under duress? On the contrary, when they answered the call to arms *without resistance* their action was voluntary and this included those who did not view the prospect of army life with relish as well as those imbued with the zeal of patriotism.

The expression of Congress cannot be distorted to imply that one who has voluntarily placed himself in a position where he is subjected to the military conscription laws of a foreign state, can preserve a duality of citizenship by asserting he did not volunteer.

The plaintiff knew Japan and knew the conscription laws of Japan. He attended school there. He discussed the matter of his citizenship with the "village master" before his return to the United States in 1935. Again, on the occasion of his visit to Japan in 1938 he discussed the matter of conscription with an "official in charge of the draft". He states that he asked how he could remove his name from the "Fam-

1. Section 801, Title 8 U.S.C., 8 U.S.C.A. § 801, provides:

"A person who is a national of the United States, whether by birth or naturalization, shall lose his nationality by: * * * (c) Entering or serving in the armed forces of a foreign state unless expressly authorized by the laws of the United States, if he has or acquires the nationality of such foreign state; * * *."

906

ily History" and was told that it could not be done because he was the "eldest son". He returned to Japan in 1940 on a *one way steamship ticket, took his physical examination for the army within three months of his arrival, and remained in*[2] *Japan for a period of sixteen months between the time of his medical examination and his induction into the army.* After his discharge from the army because of "kidney trouble", he remained in Japan.

Certainly it is not an unreasonable inference to conclude that the plaintiff went to Japan in 1940 for the specific purpose of fulfilling his duty as a Japanese citizen and eldest son, by serving in the army of Japan.

In this type of case there is but one witness, the plaintiff. The defendant has a record of the plaintiff's service in the Japanese army, but there are no witnesses available to refute his statements with respect to the voluntary character of his acts.

The plaintiff testified he went to Japan in 1940 to recover from the effects of an appendectomy. Incidentally, this operation was performed eight months earlier, in May 1939. He states that he only expected to stay in Japan a short while, and in explanation of the one-way ticket, testified he knew he could always get a return trip ticket over there. (He had just made the round trip in 1938.) He further testified that he told the doctor who gave him his physical examination for the army that he was a citizen of the United States and that he wanted to return to this country; that he was told he would be punished and might be executed; that he talked to a travel agent at Kobe and told him he would like to return to the United States.

The court is not bound to accept testimony, even when unimpeached or not directly contradicted, against presumptions or contrary reasonable inferences from other facts in evidence.[3] Such pre-

sumptions and inferences create a conflict for the determination of the trier of facts. In passing on the credibility of witnesses and the weight to be given their testimony, the trier of fact may consider their interest in the result of the case, their motives, the manner in which they testify, and the contradictions appearing in the evidence. Applying this test in the instant case leads the court to the conclusion that the plaintiff has failed to overcome the presumption that he was voluntarily expatriated by serving in the Japanese army.

The defendant will prepare and submit findings and judgment.

---

2. "A national of the United States * * * shall be presumed to have expatriated himself * * * * when he shall remain for six months or longer within any foreign state of which he * * * shall have been a national * * *." Sec. 802, Title 8 U.S.C., 8 U.S.C.A. § 802.

3. Cohen v. C. I. R., 2 Cir., 148 F.2d 336; Elzig v. Gudwangen, 8 Cir., 91 F.2d 434; Gibson v. Southern Pac. Co., 5 Cir., 67 F.2d 758; Quock Ting v. United States, 140 U.S. 417, 11 S.Ct. 733, 35 L.Ed. 501.