### SHIGENORI MORIZUMI v. ACHESON, Secretary of State.
### No. 29369.

United States District Court
N. D. California, S. D.
Dec. 14, 1951.

A. L. Wirin and Fred Okrand, Los Angeles, Cal., for plaintiff.

Chauncey Tramutolo, U. S. Atty., Edgar R. Bonsall, Asst. U. S. Atty., San Francisco, Cal., for defendant.

GOODMAN, District Judge.

Pursuant to Section 503 of the Nationality Act of 1940, 54 Stat. 1171, 8 U.S.C.A. § 903, petitioner, asserting his birth in this country, seeks a judgment declaring him to be a United States citizen.

Petitioner was born in San Francisco, California, on November 13, 1923. In 1932, his father suffered a serious bone abscess which his physician informed him would incapacitate him for a year or longer. Consequently, in September of that year, petitioner's mother took petitioner and his younger sister to the home of their paternal grandparents in Tsuyazaki-machi, Japan. Petitioner was then a few months short of 9 years of age. The next year the mother returned to the United States leaving petitioner and his sister in the care of· their grandparents.

The father's illness disabled him for more than two years. About the time that he was able to return to work, in the latter part of 1934, his wife divorced him. The father then decided to· leave the two children with their grandparents until they graduated from high school. From that time until the outbreak of the war in 1941, petitioner's father regularly sent small sums of money to the grandparents in Japan to aid in the support of the children.

In the meantime, petitioner and his sister had entered the Japanese schools, petitioner commencing in the second year of grammar school. In April of 1937, when petitioner was 13 years old, he became a student at the Fukuoka Prefectural Munakata High School—which in Japan is spoken of as a "middle school." The next month, in order to meet the requirements for attendance at middle school, his name was entered by his grandmother in the family register. The Japanese family register is a legal record of the vital facts concerning each family and its members, and is maintained at a municipal office. Japanese nationals are required by law to be registered in a family register. These records are extensively consulted in Japan. It is apparently the practice to require evidence of registration in all matters where background and status are important. See Meiji Fujizawa v: Acheson, D.C.S.D.Cal.1949, 85 F.Supp. 674, 675.

In December of 1941, when war broke out between the United States and Japan, petitioner was 18 years old and in his fifth and .final year of middle school. He testified that he was aware of the tension that existed between the United States and Japan preceding the outbreak of hostilities, and was worried about his parents. Still,

he did not realize or believe that war was imminent. He stated that he had been told by his grandmother that he could not return to the United States until he was old enough to take care of himself. He looked forward to returning after he graduated from middle school according to the family plan. In March of 1942, a few months after the war began, he graduated from middle school. Subsequently he entered Kumamoto Technical College where he studied mechanical engineering for 2½ years.

Petitioner was ordered to report for duty in the Japanese Army at the Kurume Tank Corps Camp on January 10, 1945. He testified that he did not wish to report because his parents were living in the United States and he was an American. He did report, however, without protest, because he was afraid to do otherwise. He had been told by his uncle and grandmother that it would be impossible for him to resist army service, and that he would be severely punished by the authorities if he did so. He further testified that it was common knowledge or belief among his associates that anyone who refused to enter the army would be beaten and otherwise sternly dealt with. At the time he reported for his army duty he neither took nor signed any oath of allegiance to Japan, none being required.

Petitioner trained at the Kurume Tank Corps Camp until May of 1945 when he was transferred to the 37th Tank Regiment in southern Kyushu. In July, pursuant to orders, he took the examination for reserve officer candidates. When the war ended the next month, he was still in southern Kyushu. On September 15, 1945, he was demobilized as a superior private.

Following his discharge, he worked for a while in his uncle's factory. Then he was employed by the Civil Censorship Detachment of the United States Army for two years. In 1947, he applied to the United States consul for documentation to the United States as a United States citizen. Instead of the documents requested, the vice-consul at Yokohama, on February 3, 1948, issued a certificate of loss of United States nationality. This was done on the basis of a statement of petitioner dated July 7, 1947 which apparently he had submitted in connection with his application for documentation as a United States citizen.

Petitioner's sister was permitted to return to the United States in 1948. When the Civil Censorship Detachment, for whom petitioner worked, was dissolved, he obtained employment as an interpreter in the legal section of the United States Fifth Air Force Base at Arshi, Japan. He worked there until he was permitted to return to the United States in 1950 to testify in this action, which was commenced on December 16, 1949. The trial of the cause was delayed while unsuccessful negotiations were in progress for summary naturalization under 8 U.S.C.A. § 717(c). In the meantime, petitioner attended San Francisco City College in the spring semester of 1951. He is now enrolled in the school of engineering at the University of California.

The government contends that petitioner expatriated himself pursuant to Section 401(c) of the Nationality Act of 1940, 54 Stat. 1168, 8 U.S.C.A. § 801(c), by voluntarily serving in the Japanese Army, while a Japanese national. The issue is whether such service was, in fact, voluntary. Its resolution necessarily depends upon appraisement of the petitioner's testimony.

It is clear that at the time petitioner was ordered to report for army duty in 1945, he had no reasonable choice but to do so. Nor would it be reasonable to expect him to have protested, however abhorrent such service was to him. It would have required unusual courage and intense devotion to principle for anyone in petitioner's position to have protested. In view of the domination of the military over Japanese life, the gesture would undoubtedly have been futile. For petitioner to have asserted his United States citizenship as the basis for his refusal to serve, at a time when our bombing was reducing Japanese cities to rubble, would surely have resulted in the most serious consequences. In view of what is generally known of conditions in Japan, it is not likely that he would have escaped with merely a prison sentence.

Nevertheless, the fact that he had no reasonable choice at the time of his induction would not necessarily render his service involuntary. If he had deliberately or negligently placed himself in such a position, or if he would have served willingly had a choice been open, then his military service would legally result in expatriation.

But circumstances previously related make it evident that, realistically speaking, petitioner had no control over the factors which placed him in Japan at the outbreak of the war. Thereafter, of course, he had no avenue of escape.

His testimony that his army service was impelled by fear rather than by desire or willingness to further the cause of the Japanese government is credible. In my opinion, therefore, his acts were not voluntary in the sense that they worked an expatriation. Savorgnan v. United States, 1950, 338 U.S. 491, 70 S.Ct. 292, 94 L.Ed. 287.

Of the eleven reported cases involving the voluntary nature of military service asserted as the basis for loss of United States citizenship under the Nationality Act of 1940, 8 U.S.C.A. § 501 et seq., eight of them hold the service to have been involuntary, some of them upon facts less favorable to the petitioner than those in this case. See Dos Reis ex rel. Camara v. Nicolls, 1 Cir. 1947, 161 F.2d 860; In re Gogal, D.C.W.D. Pa.1947, 75 F.Supp. 268; Ishikawa v. Acheson, D.C.Hawaii 1949, 85 F.Supp. 1; Shibata v. Acheson, D.C.S.D.Cal.1949, 86 F. Supp. 1; Podea v. Acheson, 2 Cir., 1950, 179 F.2d 306; Kanno v. Acheson, D.C.S.D. Cal.1950, 92 F.Supp. 183; Kato v. Acheson, D.C.S.D.Cal.1950, 94 F.Supp. 415; Ozasa v. Acheson, D.C.S.D.Cal.1950, 94 F.Supp. 436; Tomasicchio v. Acheson, D.C.D.C. 1951, 98 F.Supp. 166. Three cases hold the military service to have been voluntary. These are Kondo v. Acheson, D.C.S.D.Cal. 1951, 98 F.Supp. 884; Hamamoto v. Acheson, D.C.S.D.Cal.1951, 98 F.Supp. 904; and Cantoni v. Acheson, D.C.N.D.Cal.1950, 88 F.Supp. 576. The facts of the Hamamoto and Cantoni cases are materially different from those in the instant case. The Kondo case is somewhat similar, but significantly,

in that case, there was evidence that Kondo displayed zealous efforts to accomplish promotion in the Japanese Army.

Decree for petitioner upon findings to be presented pursuant to the Rules.