## PARACCHINI v. McGRATH, U. S. Atty. Gen., et al.

United States District Court
S. D. New York.
Feb. 19, 1952.

Ferro & Cuccia, New York City, Joseph F. Cuccia and Josephine Ferro, New York City, of counsel, for plaintiff.

Myles J. Lane, U. S. Atty., New York City, Robert Rubinger and Harold J. Raby, Asst. U. S. Attys., New York City, of counsel, for defendants.

IRVING R. KAUFMAN, District Judge.

The question in this case is whether the plaintiff, concededly a native-born United States citizen, expatriated himself under Section 2 of the Nationality Act of 1907[1] when he was drafted into the Italian Army in April 1931 and served therein until December of 1931, and whether the taking of an oath of allegiance to the Italian Government, if such oath was taken, in April or May of 1931, was sufficient for expatriation.

The plaintiff was born in Herminie, Pennsylvania, on August 17, 1910. When he was approximately three years of age he was taken to Italy by his parents where he remained continuously until he was drafted into the Italian Army in April 1931.

1. 8 U.S.C.A. § 801 note.

The plaintiff insists that he protested to the Commandant of the post at Turin that he was an American citizen, but that no attention was given to his protest.

The plaintiff says that on or about May 24, 1931, there was a mass swearing-in of conscripted soldiers and that on that day he was in the infirmary in the headquarters hospital and therefore did not take the oath to the Government.

After his release from the Army in December 1931 he remained in a military reserve status, and then he was recalled for further service in 1938 for a period of a few days, and again in 1939 for a period of a few more days.

On these latter occasions no oaths of allegiance were administered.

Plaintiff was then again recalled to duty in February, 1941 and he served until September, 1943. The latter service in the Army, it is conceded by the Government, does not form the basis of their claim that the plaintiff has expatriated himself.

The Government's position may be summarized in the following fashion: They claim that his service in the Italian Army in 1931 was a voluntary act on the part of the plaintiff and that any oath which he did take was purely voluntary on plaintiff's part; that as further proof of the voluntary nature of the act plaintiff did nothing between 1931 and 1940 to openly declare his desire to retain his American citizenship and therefore it follows, the Government says, that he, without doubt, intended to expatriate himself.

In 1940 the plaintiff made application to the American Consul in Florence, Italy, for a United States passport to return to this country. It appears from the exhibits in evidence concerning his application for this passport that the plaintiff stated that he had taken an oath of allegiance to the Italian Government in 1931.

In Exhibit A–1, which is the application for the passport, there was printed matter in which the plaintiff asserted that he never had taken an oath of allegiance to a foreign government. These two statements are obviously inconsistent, and plaintiff explains this by stating that an error was made by the clerk in the Consul's office who was filling out both the affidavit and the application; that the had stated that there had been a mass swearing-in of all of the soldiers in Turin, Italy, in May of 1931, which undoubtedly he says, was mistaken by the clerk as a statement by plaintiff that he had taken part in the swearing-in ceremony.

It appears from both the affidavit concerning the passport and the application that they were completely filled out by typewriter and unquestionably the typewriter was operated by the clerk in the consulate office.

The plaintiff further asserts, and there is nothing in the record to indicate that it is not so, that he could not speak or understand English at the time that Government's Exhibits A and A–1 were filled out and executed.

Again in 1946 plaintiff made an application for a United States passport at the same consulate and generally the same procedure was followed with respect to this application-affidavit as was followed with respect to the application-affidavit of 1940.

In the 1946 affidavit there is a statement to the effect that he did take an oath of allegiance to the Italian Government in 1931, and in the application there is the printed matter indicating that he never had taken an oath of allegiance to the Italian Government.

In 1947 the plaintiff went to the American consulate in Genoa, Italy, at the suggestion, as he states, of the American consulate in Florence, Italy.

In Genoa he made application for a non-quota visa under Section 317(c) of the 1940 Nationality Act, 8 U.S.C.A. § 717(c).

It is apparent that the idea of making the non-quota visa application under Section 317(c) of the 1940 Act was not the plaintiff's, for at that time he was not familiar with the English language. The suggestion came from some employee or officer of the American consulate.

The plaintiff says that he applied for this visa to come to this country and attempt to establish his American citizenship.

There is a gap between 1931 and 1940, during which I find no activity on the part

of the plaintiff to assert his American citizenship. However, this may be explained by the fact that, as the plaintiff stated, while at all times he considered himself to be an American citizen there was nothing he could do to establish his American citizenship because he did not have an American birth certificate.

At the very earliest moment, which was some time in 1940, his brother, who worked on board a ship and spoke the English language, made a trip to the United States with the purpose in mind of journeying to Herminie, Pennsylvania, to establish the plaintiff's birth in the United States, which indeed he did accomplish, and we note that the plaintiff's birth was registered for the first time in the United States in Herminie, Pennsylvania, on August 7, 1940.

The plaintiff says that as soon as he had that birth certificate he went to the consulate in Florence and that Exhibits A and A–1 represent the first effort made by him after he obtained the birth certificate.

I am of the opinion that the plaintiff did not take the oath of allegiance to the Italian Government in 1931. However, assuming that such oath were taken, I am prepared to hold that his oath, as well as his service in the Italian Army, were not voluntary on his part.

The very essence of expatriation is that it must be completely voluntary. Section 2 of the Nationality Act of March 2, 1907, is to be distinguished from the 1940 Act—I refer to Section 401(c) of the Nationality Act of 1940, 8 U.S.C.A. § 801(c)— for under the former Act mere service in the Army is not sufficient to bring about expatriation. There must be in addition a voluntary oath of allegiance to the foreign government.

This proceeding, it has been agreed by both sides, is brought pursuant to the 1907 Act, so that I need not determine whether there were any other formal declarations of allegiance to a foreign state which would be sufficient to bring about expatriation under the 1940 Act.

The Attorney General of the United States, J. Howard McGrath, in an opinion dated May 8, 1951, to the Secretary of State, 41 Op.Atty.Gen. 16, had before him

a case which bears strong resemblance to the instant case. The applicant in the case before the Attorney General, one Antonio Panzica, was born in the United States in 1910. His father was a native of Italy who was a naturalized American citizen. In 1919 Panzica was taken back to Italy by his father. He became a dual citizen, having both United States citizenship by birth and Italian citizenship under the Italian law.

In 1927 he visited the United States where he remained until 1929 when he returned to Italy and remained continuously in Italy until 1938. He became liable for six months' service in the Italian Army by virtue of his residence in Italy, and by virtue of his dual citizenship. This service was compulsory as was the service of the plaintiff in the instant case.

Panzica was inducted into the Italian Army on April 14, 1931, and he served until October 12, 1931. He was required by law to swear allegiance to the King of Italy. Panzica had denied at one time that he was present at the ceremony at which the oath was administered collectively to his regiment, but at a hearing before a Naturalization Examiner in 1944 he admitted that he had taken the oath, but stated that it was under compulsion.

The Attorney General assumed that he had taken the oath. He asserted the principle that before there can be expatriation the act which brings about that result must be completely voluntary. The Attorney General stated: "In my opinion the choice of taking the oath or violating the law was, for a soldier in the Army of Fascist Italy, no choice at all. Mr. Panzica's oath can only be regarded as having been taken under legal compulsion amounting to duress. See Dos Reis ex rel. Camara v. Nicolla, 1 Cir., 161 F.2d 860, Podea v. Acheson, 2 Cir., 179 F.2d 306." And continuing the quote: "He served in the Italian Army only for the minimum time required by law, and he does not appear to have done anything savoring of allegiance to Italy beyond what he was compelled to do. Accordingly, his oath-taking must be regarded as compulsory and cannot, without more, be deemed to have cost him his United States citizenship."

I do not find from the evidence that the conduct of the plaintiff shows any genuine desire to serve or to adhere to the foreign country other than merely submitting himself to its laws. There has not been a scintilla of evidence produced before me to show any other activity on the part of the plaintiff which would indicate a true allegiance to the Italian Government or a desire to adhere to the principles of this foreign country.

The application for a non-quota visa, I believe, contains a statement to the effect that the plaintiff expatriated himself by his service in the Italian Army from 1941 to 1943. This is completely erroneous and the Government so admits in these proceedings.

I cannot draw any inference from the fact that the plaintiff sought a non-quota visa when it is apparent that he was laboring under a misapprehension with respect to the true principles of law, and that indeed the representative of the American consul in Italy had given him erroneous advice.

I adhere to the opinion of the Court of Appeals for this Circuit in Podea v. Acheson, 2 Cir., 179 F.2d 306, and it is my conclusion that the plaintiff did not serve voluntarily in the Italian Army in 1931, 1938, or 1939; that he did not take an oath of allegiance to the foreign government in 1931; that if he had taken an oath of allegiance it was involuntary; and that the plaintiff has not expatriated himself as a citizen of the United States.