**LEHMANN v. ACHESON, Secretary of State.**

**Clv. A. No. 11507.**

United States District Court
E. D. Pennsylvania.

Feb. 6, 1953.

Owen F. McLane, Henry A. Craig, Philadelphia, Pa., for plaintiff.

Gerald A. Gleeson, U. S. Atty., Alfred L. Luongo, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

CLARY, District Judge.

Albert Hermann Lehmann, plaintiff, born in Philadelphia, Pennsylvania, June 2, 1921, of parents who were Swiss nationals, acquired dual nationality under the laws of the United States and of Switzerland. In 1924, at the age of three years, he was taken by his mother to live with her in Switzerland, his father continuing to reside in the United States. The father was naturalized in Philadelphia in 1928. In 1939, at the age of eighteen years, plaintiff registered for service in the Swiss Army under the compulsory military service laws of that country. He never registered as an American citizen with the American Consulate, although the record of this case indicates that the preponderant majority of American citizens residing in the consular district of Switzerland in which he lived had a record of such registration. After physical examination preparatory to entering into the Swiss Army in 1941, when Switzerland was completely surrounded by countries at war, he testified that he made a visit to the American Consulate in Basel, Switzerland, his home city, and made casual inquiry at that office as to whether he could enlist there for service in the United States Air Force. He was

informed that the Consulate could not enlist anyone for service in the United States Army and further that if he desired to enlist in the United States Army he would have to go through France to Spain and make his own way to America for that purpose. He testified that he then stated to a clerk at the Consulate that he had been born in the United States, but when asked for proof of such birth not only failed to furnish it but failed to inquire how he could establish his American birth. His testimony indicates that he then knew and had known for many years of his dual nationality. Thereafter, in July of 1941, he entered the Swiss Army and served therein during the years and for the following periods of time:

| | | |
|---|---|---|
| 1941 School of Recruits | 118 | days |
| 1941 Active service | 27 | " |
| 1942 " " | 156 | " |
| 1943 " " | 61 | " |
| 1944 " " | 102 | " |
| 1945 " " | 34 | " |
| 1947 Refresher course | 13 | " |

On November 21, 1941, plaintiff took an oath of allegiance to Switzerland. At no time did he protest service in the Swiss Army. At the conclusion of World War II, he conceived the idea of visiting his father in America. In December of 1945 he addressed a letter to the American Consulate inquiring about a visa for that purpose only and was informally and verbally advised that because of his service in the Swiss Army he could not obtain a passport or a visa. As a result of this conversation and his admission to T. R. Flack, American Vice Consul, at Basel, Switzerland, that he had actually served in the Swiss Army from 1941 to 1945, that official executed a Certificate of Loss of Nationality of the United States of plaintiff Albert Hermann Lehmann on April 17, 1946. Thereafter, plaintiff made no further efforts to secure a passport or visa until June 1, 1948. This inaction is completely explained in the plaintiff's testimony at the hearing in this case. Plaintiff's mother, with whom he resided, had from 1936 to the time of her death on December 26, 1947, been afflicted with a nervous ailment. When first taken ill she had been hospitalized for several months and had been in poor health for many months prior to her death. Plaintiff testified very frankly that because of the condition of his mother's health, he would not have in any event, while she lived, returned to the United States. On June 1, 1948, plaintiff executed a preliminary application for a nonimmigrant visa, stating in said application that the purpose of his trip to the United States was to visit his father for four months and listing his nationality as Swiss. A nonimmigrant visa was accordingly issued and in August of 1948 he came to the United States for the apparent purpose of visiting his father. He thereafter filed an application to regain his American citizenship but the proceedings were withdrawn in this Court and rendered null and void by the order of Judge Welsh, dated September 8, 1950. Plaintiff then instituted this action for a declaratory judgment petitioning the Court for a judgment declaring him an American citizen with all the rights and privileges thereof. The Secretary of State has resisted the petition on the grounds that under the Nationality Act of 1940, particularly Section 401 of the Nationality Code, 8 U.S.C.A. § 801, plaintiff herein has lost his United States nationality. The pertinent provisions of the Act are as follows:

"§ 801. General means of losing United States nationality

"A person who is a national of the United States, whether by birth or naturalization, shall lose his nationality by: * * *

"(b) Taking an oath or making an affirmation or other formal declaration of allegiance to a foreign state; or

"(c) Entering, or serving in, the armed forces of a foreign state unless expressly authorized by the laws of the United States, if he has or acquires the nationality of such foreign state".

From the foregoing facts it will be seen that plaintiff falls squarely within the terms of subsections (b) and (c) of Section 801. He has taken and does not deny taking an oath of allegiance to Switzerland. He entered and served in the armed forces of Switzerland as a Swiss citizen, which service is not expressly authorized by any stat-

ute of the United States. Plaintiff contends, however, that these sections are not applicable because his entering in and serving in the Swiss Army was involuntary and under compulsion; that the taking of an oath of allegiance was merely an incident thereof; and that he has not by any voluntary act of his own renounced his American citizenship.

It would appear that if the plaintiff could sustain his contentions he would be entitled to a judgment in his favor declaring him an American citizen; Perkins v. Elg, 307 U.S. 325, 59 S.Ct. 884, 83 L.Ed. 1320; Dos Reis ex rel. Camara v. Nicolls, 1 Cir., 161 F.2d 860; Podea v. Acheson, 2 Cir., 179 F.2d 306, and Mandoli v. Acheson, 344 U.S. 133, 73 S.Ct. 135.

Perkins v. Elg, supra, is authority for the proposition that a native born United States citizen taken abroad by his parents during minority to the country of the parent's origin, where they resume their former allegiance, does not lose his citizenship if he elects to retain United States citizenship and to return to the United States, since the principle of expatriation presupposes a voluntary renunciation or abandonment of citizenship, which cannot be imputed to an infant during his minority.

Dos Reis ex rel. Camara v. Nicolls, supra, is authority for the proposition that one born in the United States and taken abroad during his minority to a Portuguese island and thereafter inducted into the Portuguese Army against his will does not lose his United States citizenship. The facts of the case clearly showed that the petitioner there never forswore his American allegiance but had done all things possible to assert and preserve it. His service as a draftee in the Portuguese Army, with a concentration camp as the alternative, was under duress. As soon as he could manage it, he returned to the United States as a stowaway, which facts the Court held attested to the intensity of his purpose to retain his American nationality. Judge Magruder in that case discussed fully the historical background of the Nationality Act of 1940 and emphasized that service in a foreign army did not ipso facto automatically cause loss of American citizenship acquired by birth but merely created a rebuttable presumption.

Judge Hand in the case of Podea v. Acheson, supra, held that the act of an American national in pledging allegiance to a king of a foreign country, when inducted into an army of the foreign country, would be held to be under duress and not to have resulted in expatriation where the acts were primarily caused by erroneous advice of the State Department that he had lost his American citizenship, plus the added fact that he would have been guilty of a criminal offense in the foreign country had he claimed other nationality in order to escape conscription and had failed to sustain his claim.

In the case of Mandoli v. Acheson, supra, the Court held that a native born citizen by foreign residence long continued after his majority cannot be considered as having voluntarily expatriated himself if he elected United States citizenship; that when he attained his majority he was under no statutory duty to make an election and return to the United States. However, it will be noted that the question involved in this case, of service in a foreign army and the taking of an oath of allegiance to the foreign country, was in the opinion of Mr. Justice Jackson clearly excluded as a basis of the decision. This exclusion was based upon the ruling of the Attorney General that Mandoli's service in the Italian Army could "only be regarded as having been taken under legal compulsion amounting to duress". [344 U.S. 133, 73 S.Ct. 136.]

The only question to be determined in this case is whether plaintiff herein has sustained his burden of showing that his military service in the Swiss Army and his oath of allegiance to Switzerland were "involuntary". I have accepted as true his uncorroborated statement that he actually made a visit to the American Consulate in Basel, Switzerland, in the Spring of 1941. At that time he had passed his physical examination for service in the Swiss Army and was fully aware that he would be called immediately for service therein. An examination of his testimony about that visit, of which incidentally no notation appears in the records of the American Consulate, re-

veals no desire on his part to retain his American citizenship. He did not then ask specifically for the protection of the American Consulate and expressed no desire to register as an American citizen. Whether as an American citizen he would be subject to compulsory duty in the Swiss Army was then and is now the subject of a convention between Switzerland and the United States signed at Bern, Switzerland, November 11, 1937, proclaimed December 13, 1938, and published at 53 Stat. 1791. The record is barren of any request by him for information as to whether he would be subject to that duty. As stated above, he made no effort then or later to request the assistance of the Consulate in establishing his American birth. While he testified generally that he had stated he had to go in the army, the record is devoid of any evidence that he brought to the attention of the Consulate the fact that he was subject to immediate service. He entered the military service of Switzerland without protest, took an oath of allegiance to Switzerland in November of 1941 without protest, at a time when he was over twenty years of age, and thereafter continued to serve regularly for a period of four years without either complaint or protest.

It is clear that his first written communication with the American Consulate was December 10, 1945, in which letter he merely asked to be advised of the conditions under which he might obtain a visa to travel to the United States to visit his father in Philadelphia. As a consequence of this letter and on his visit to the Consulate on January 11, 1946, he was informally advised that because of his military service in the Swiss Army he had expatriated himself under the Nationality Act of 1940 and for that reason could not obtain either a passport or a visa. Again, he made no protest nor did he make any statement that he desired retention of American citizenship. The only document which even remotely resembles a claim to American citizenship was a letter to the American General Consulate at Zurich, dated March 28, 1946, when he inquired whether he could obtain for himself an American passport. He appeared before the Consul on the 17th day of April,

1946, and there was issued to him a Certificate of Loss of Nationality under Section 501 of the Nationality Act of 1940. This certificate he asked for and received for the purpose of coming to the United States to visit his father. Again, he made no protest that his service in the Swiss Army was involuntary nor did he make any statement of any kind to the Consul expressive of a desire to either retain or regain his American citizenship.

Plaintiff had available to him every facility that could be afforded by the United States to any of its citizens abroad, including the presence of an American Consulate in his home city wherein he could have at any time expressed his intention to retain his American citizenship. He communicated with this Consulate in writing and visited it several times. The records of the Consulate are very complete as to every visit and every communication since December 10, 1945. The absence of any record of his visit in 1941 shows how unimportant both he and the Consulate considered it. It was only after he had come to the United States and had practically completed the process of regaining his citizenship under the accelerated method then provided that he first advanced the contention here made that his Swiss service was involuntary. There are none of the appealing factors of the Dos Reis, Podea, and Mandoli cases present in the instant action. Again, it was only after he had come to the United States and was faced with the prospect of returning to Switzerland that he suddenly evinced a desire to establish his American nationality. Taking into consideration all of his actions from 1941 to 1948, I can only find that such actions were entirely consistent with an election on his part to choose Swiss nationality and in nowise reflected any intensity of purpose on his part to retain his American citizenship.

■■ I, therefore, conclude from all the evidence in this case that Albert Hermann Lehmann has failed to establish by a fair preponderance of the evidence that his oath of allegiance to Switzerland and service in the Swiss Army were involuntary. Consequently, he is subject to the provisions of Section 401(b, c) of the Nationality Act of

1940, 8 U.S.C.A. § 801(b, c). The foregoing discussion includes my findings of fact in this case.

### Conclusions of Law.

1. Plaintiff Albert Hermann Lehmann was a citizen of the United States and a citizen of Switzerland at birth, acquiring the nationality of the United States by reason of his birth in the United States, and acquiring Swiss nationality by virtue of being born of a Swiss father who had not renounced his Swiss nationality.

2. Plaintiff has expatriated himself from United States citizenship by service in a foreign army and by taking an oath of allegiance to Switzerland on November 21, 1941, contrary to the provisions of Sections 401(b) and 401(c) of the Nationality Act of 1940, 8 U.S.C.A. § 801(b, c).

3. Plaintiff has not sustained the burden of establishing that his service in the Swiss Army at various times from 1941 to 1947 and his taking of an oath of allegiance to Switzerland on November 21, 1941 were involuntary.

4. Plaintiff has not sustained his burden of establishing that he is a citizen of the United States.

5. Judgment will be entered in favor of the defendant.