MATTER OF QUINTANILLA-MONTES

In Exclusion Proceedings

A-18464888

*Decided by Board March 20, 1970*

"Sunday marching" and drill for about an hour in Mexico under the direction of a soldier from the regular Mexican Army, over a period of approximately a year, during which no rank was held, no firearms were issued nor instructions given in the use of weapons, no uniforms, pay nor allowances of any nature were received, and no food, transportation nor medical services were furnished, did not constitute service in the armed forces of a foreign state so as to expatriate under section 349(a)(3) of the Immigration and Nationality Act.

EXCLUDABLE: Act of 1952—Section 212(a)(20) [8 U.S.C. 1182(a)(20)]—Immigrant—no immigrant visa.

The special inquiry officer, at the request of the Immigration and Naturalization service, has certified to us for final decision his order in these exclusion proceedings that the applicant be admitted to the United States as a citizen thereof. The question decided by him was whether the applicant was a United States citizen or whether he was an immigrant not in possession of an immigrant visa and thus excludable under section 212(a)(20) of the Immigration and Nationality Act.

The applicant is a 33-year-old married male who was born in Laredo, Texas to a Mexican citizen father and a United States citizen mother. Under these circumstances he acquired at birth dual citizenship of the United States and Mexico.[1] At the age of three he was taken to Mexico by his parents and resided there ever since with the exception of several one day visits when he was seven or eight years old and again when he came to the United States in 1968 for two months, entering as a visitor for pleasure.

On November 21, 1968 the applicant applied for admission to

---

[1] Section 301(a), I. & N. Act (8 U.S.C. 1401(a)); Article 30 (as amended in 1934) of the Mexican Constitution of 1917 (Ex. 3).

the United States as a United States citizen. He was detained for a hearing. The question arose as to whether the applicant who had acquired United States citizenship at birth had not subsequently expatriated under section 349(a)(3) of the Immigration and Nationality Act by reason of having served in the armed forces of a foreign state. Section 349(a)(3) of the Act provides:

From and after the effective date of this Act a person who is a national of the United States whether by birth or naturalization loses his nationality by entering, or serving in, the armed forces of a foreign state unless, prior to such entry or service, such entry or service is specifically authorized in writing by the Secretary of State and the Secretary of Defense.

Applicant's alleged military service in Mexico lasted for approximately a year, from December 1955 to December 1956, during which time he engaged in "Sunday marching." This consisted of his meeting once a week with a small group of eighteen and nineteen year old boys who would then, under the direction of a soldier from the regular Mexican Army, march and drill for about an hour, after which they engaged in sports.

Those engaged in Sunday marching held no rank. They were not issued firearms or instructed in the use of weapons. They received no uniforms, but those who could afford it purchased khaki pants and shirts. They received no pay or allowances of any nature. No food, transportation or medical services were furnished. The marchers did, however, salute the Mexican flag and on certain occasions would recite a verse which amounted to a pledge of allegiance to the flag. From the testimony of the applicant it appears the entire activity was conducted in a most informal manner. The marchers were subject to being drafted into the regular armed forces of Mexico, but all male citizens over the age of 18 were subject to this whether they engaged in Sunday marching or not.

There have been several cases before this Board in which Sunday marching was involved. In *Matter of Vargas-Calderon,* 1611-10445 (BIA, 1954) (unreported), the question arose whether the applicant had made an affirmation of loyalty to Mexico while serving as a Sunday marcher so as to expatriate himself under section 401(b) of the Nationality Act of 1940. Our decision was concerned with expatriation by oath taking rather than by service in the army of a foreign state.

In *Matter of M—G—,* 6 I. & N. Dec. 641 (BIA, 1955), we decided the case on two grounds. The first was that there was no proof that the marcher had taken an oath of allegiance to a foreign state so as to expatriate under section 401(b) of the Nation-

ality Act of 1940. The second was that there was in force at that time Executive Agreement No. 323 between the United States and Mexico [2] which provided exemption from loss of nationality under section 401 (c) of said Act to United States nationals who were required to serve in the armed forces of Mexico.[3] A similar result was reached in *Matter of Lopez-Vasquez*, A–8943473 (BIA, 1956) in which we said: "Since the evidence before us affirmatively establishes that the applicant was conscripted into the armed forces of Mexico while Executive Agreement No. 323 was in force and effect, we find that he did not expatriate himself under section 401 (c)."

In all of the above cases it was assumed that Sunday marching constituted military service. Each case was then decided upon a different ground, *e.g.*, oath taking and/or the effect of Executive Agreement No. 323. The case before us now appears to be the first in which the specific question of whether Sunday marching is tantamount to military service, has been raised and argued.

We conclude that Sunday marching as described above does not constitute service in the armed forces of a foreign state so as to expatriate one under section 349 (a) (3) of the Immigration and Nationality Act. To deprive one of his United States citizenship we feel that the statute contemplates much more than simply marching an hour or so each week. We hold that applicant's "Sunday marching" was not an act in derogation of his allegiance to the United States or inconsistent with his obligations, responsibilities and loyalty as a United States citizen.

The record contains substantial evidence that the Sunday marching by the applicant was compulsory under Mexican law. Since we hold that the marching itself was not within the ambit of section 349 (a) (3), we need not confront the conclusive presumption of voluntariness that would otherwise apply under section 349 (b) of the Act. Compulsory military service, of course, does not expatriate.[4] Further, the pledge of allegiance to the Mexican flag that applicant was compelled to take, even if such pledge is considered as an oath of allegiance, is not expatriating under

---

[2] In force from January 22, 1943 to October 28, 1952.

[3] A Circular of the Minister of National Defense of Mexico, dated December 14, 1948 states that the *Mexican Government* considers men engaged in Sunday military service to be a part of the active, regular army of Mexico during their year's service. The State Department regarded the circular as a statement of the status of persons engaged in Sunday marching.

[4] *Lehmann* v. *Acheson*, 206 F.2d 592,594 (3 Cir., 1953); *Dos Reis exrel. Camara* v. *Nicholls*, 161 F.2d 860 (1 Cir., 1947); *Podea* v. *Acheson*, 179 F.2d 306 (2 Cir., 1950); *Pondolfo* v. *Acheson*, 202 F.2d 38 (2 Cir., 1953).

section 349 (a) (2) of the Act as it was a concomittant of his non-expatriating marching and not a separate and distinct act.[5]

ORDER: It is ordered that no change be made in the order of the special inquiry officer and that the applicant be admitted to the United States as a United States ciizen.

---

[5] *Matter of V—L—*, 5 I. & N. Dec. 497 (BIA, 1953); *Moldoveanu v. Dulles*, 168 F. Supp. 1 (E.D. Mich., 1958).